Henry C. Schmidt, Edward A. Schmidt and Frederick W. Schmidt, trading as C. Schmidt & Sons ; Charles J. Gallagher, trading as Gallagher & Burton ; Henry B. Grauley, judgment creditors of Alexander Obermeyer and Margaret A. Obermeyer, his wife, in their own behalf and the said Alexander Obermeyer in behalf of his said judgment creditors, Appellants, *v.* Rudolph R. Baizley and John Baizley.

*Equity—Equity practice—Findings of fact.*

While it is the better practice for the findings of a court of equity to be expressed in separate and numbered clauses so as to present each one independently and distinctly, an omission to do this is not a ground for reversal, if the findings are expressed severally, and are easily capable of separate consideration.

*Deed—Fraud—Evidence—Equity.*

In a bill in equity to declare two conveyances of real estate null and void, plaintiffs, who were the grantor, his wife and his judgment creditors, alleged that the deeds were made to the defendants not as absolute conveyances, but in trust to protect the creditors of the grantor.   The averments of the bill were sustained by the testimony of the grantor and his wife, but they were contradicted by the defendants who averred that the convey-

ances had been made in part payment of a debt. The grantor admitted in his testimony that he was largely indebted to the defendants at the date of the conveyances. The evidence showed that the grantor, contemporaneously with the execution of the conveyances, leased the premises from defendants, at a fixed rental; that he paid the rental as it matured; that he afterward executed another lease, and that he subsequently on applying for a liquor license averred under oath that the defendants were the owners of the premises. He also in two statements of account acknowledged the ownership of the defendants, and in other litigation filed two affidavits in which he made averments respecting the purpose for which the deeds were executed wholly inconsistent with the allegations in the bill. *Held,* that the bill was properly dismissed.

Argued Jan. 17, 1898.　Appeal, No. 256, Jan. T., 1897, by plaintiffs, from decree of C. P. No. 3, Phila. Co., June T., 1895, No. 1377, dismissing bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.　Affirmed.

Bill in equity to declare conveyances of real estate null and void.

GORDON, J., filed the following opinion:

The plaintiffs are judgment creditors of Alexander Obermeyer, and sue with him and his wife for the purpose of having set aside and declared null and void certain conveyances of real estate in the city of Philadelphia, executed by him to Rudolph R. Baizley, one of the defendants. The said Rudolph R. Baizley subsequently conveyed the premises to John Baizley, the other defendant. Reconveyance by these defendants to Obermeyer is also prayed for in the bill, together with injunctions restraining the defendants from exercising any rights of ownership in the premises. The plaintiffs' allegations are that the deeds executed by Obermeyer, while absolute on their face, were, in fact, conveyances in trust to Baizley for the purpose of being held and used only in case it should become necessary for the said Baizley to make use of the same to protect the creditors of said Obermeyer and the interest of him and his wife therein. In substance, then, this is an effort to avoid the effect of deeds absolute on their face by alleging a parol trust in violation of which, and in fraud of the creditors' rights, the deeds are being used. The plaintiff who asserts such facts, to avoid the effect of his deliberate acts, evidenced by solemnly attested deeds,

must establish his contention clearly, unequivocally and satisfactorily. These plaintiffs would have no standing in this form of proceedings, in our judgment, except for their allegation of fraud; and the proof upon this subject must not be left to uncertain inferences or dependent upon their own testimony, but must be definitely established, and their own testimony must be substantially corroborated by other credible testimony.

While the evidence taken in this case is voluminous, and dealt largely with matters of account, it related only to two or three propositions of fact, the determination of which must control the case. It appears that Obermeyer, desiring to embark in another and easier business, sought or met Rudolph R. Baizley, whom he knew, and with whom he had had very friendly relations. Baizley, for the purpose of befriending Obermeyer, suggested that he should obtain a suitable place for setting up a retail liquor store, and agreed to furnish him with the necessary funds in order to obtain title to a suitable property, and, from time to time, to supply him with money necessary to carry on the business. Obermeyer obtained such a property, Baizley supplied him with the purchase money needed to secure the title, and started him in the business. Their relationship, from that on until the differences out of which this suit grew arose, was of the most intimate and friendly character. Baizley continued through years, apparently from no other motive than that of regard for Obermeyer and a desire to benefit him, to advance him money, and in various ways to enable him to prosper in business. After a time Obermeyer became embarrassed, and was indebted to Baizley in a large sum of money. In March, 1893, for the purpose of reimbursing and securing Baizley for the advances made, he conveyed the premises in two separate deeds. Subsequently Baizley advanced additional sums of money to Obermeyer, and in August, 1893, the deeds named were canceled or destroyed, and new deeds for the same premises again executed by Obermeyer and his wife. Contemporaneously with the execution of these deeds, Obermeyer, in writing, admitted an indebtedness to Baizley of $36,041.11, and recited that the deeds were executed for a consideration of $8,000, as the agreed equity of Obermeyer in the premises above the incumbrances, and that Obermeyer was to receive a credit of $8,000, upon his indebtedness. On August 21, 1893, a supplement to this agree-

ment was executed by Obermeyer, setting forth that he had borrowed above $6,000 additional from Baizley, and that the balance due to Baizley above the $8,000 credit allowed for the conveyance of the premises was $34,178.76.

Judgment notes for this balance were also executed by Obermeyer, and accompanying these written agreements was a detailed statement of the sums due, the days upon which they were advanced, the interest thereon, a credit of $8,000 on account of the conveyance of the property, and a net balance was struck. It is to avoid the effect of these conveyances that this suit is brought. The testimony of Obermeyer is voluminous, involved, prolix and uncertain. Upon one point he testifies with absolute certainty, and that is as to his allegation of the purpose for which the conveyances were made. He avers, that at the time of the execution of the deeds he stated, and Baizley expressly agreed, that the conveyance was to be made only for the purpose of securing, if necessary, his creditors and his wife. His wife, as a witness on this point, testified similarly to her husband. It is impossible to read Obermeyer's testimony, as it was impossible to listen to it, without seeing that upon every point, except this material one, he vacillated, hesitated, was uncertain, involved and indefinite. His testimony is contradicted flatly by that of Baizley, the other party to the transaction; and these three witnesses constituted all who testified directly upon this point. The remainder of the mass of testimony related to the subject-matter only collaterally, indirectly and persuasively. Confessedly, if there was nothing more in this case than the conflicting statements of Baizley and Obermeyer, the testimony of the latter would alone be insufficient to set aside his solemn deed. In how much better position does the corroboration of the wife put his testimony? We would not be understood as saying that the marital relation, of itself, casts any doubt upon the credibility of the wife, but as she is a party to the deed, and as she also cannot be heard alone to successfully contradict her grant or conveyance, and as she is as much an interested party as her husband, her testimony must be taken with the same legal limitations, subject to the same necessity for corroboration, and open to the same question upon the score of interest that his testimony is. If, therefore, his testimony is incredible, doubtful and contradictory in itself, and

because of its uncertainty, her testimony, without now criticising it, cannot then be considered logically as more than a scintilla, and as much less than satisfactory proof.

Obermeyer avers that such was his confidence in Baizley, that he signed any papers that were brought to him; that he was a sick and infirm man; that he was not in full possession of his will power, and that he trusted Baizley to the extent of taking all his statements without inquiry. When a full grown man sets up such a defense as this against the effect of his acts it is always suspicious. In this case, stripped of the plaintive terms in which Obermeyer sets forth his infirmities, his testimony amounts to no more than that he is a very sick man, who, for a period, was obliged to seek a health resort because of his physical ills and, possibly, mental depressions. That he was either insane, forgetful, incapable of thinking logically and correctly, of knowing what was communicated to him, and what was the effect of the acts he was committing, cannot possibly be concluded upon the strongest view of his testimony. Indeed, the claim under which he sues in this case, the averments he makes as to the purpose and effects of the deeds which he executed, if true, would show that his mind was acute, logical and alive to all the consequences of his acts. We are obliged to conclude that Obermeyer knew perfectly well his situation at the time of the execution of the deeds and the effect of his acts, and was in full possession of his memory, will and reason. From his own testimony, it is apparent that, at the time the deeds were executed, he was largely indebted to Baizley, in a sum of money, which, while he was unable to state or declined to fix definitely, exceeded $20,000, and Baizley was pressing him for some adjustment, payment or security for the debt. While it may be true that Obermeyer trusted Baizley implicitly, as he ought to have done, for he was the sole beneficiary of their transactions, it is equally true that Baizley trusted Obermeyer as fully, and evidenced his trust by large and continuous advances of money.

Obermeyer made an effort on the stand to impeach the correctness of the statements of indebtedness and the itemized accounts which were signed by him and affirmed to be true, contemporaneously with the execution of the deeds of August 12, 1893, but upon this point his denials were in the air. He failed at every point to corroborate his denial by any testimony, whereas

he was confronted with scores of checks bearing his signatures, and evidencing his receipt of money. Though he averred that he had memoranda or accounts of his own to show indebtedness of Baizley for various small sums by which he sought to reduce the amount of the balance which he had twice in writing admitted to be due him, yet he produced none of this data. Nothing could be more unsatisfactory, nothing less worthy of credence than his testimony upon this point, and on this point he is the sole witness. It may be true, it probably is true, and the court is inclined to believe, that an absolutely exact statement of account between Baizley and Obermeyer is now impossible. But, if this is so, it proceeds equally from the carelessness and want of method upon both sides. Certainly, all the written evidence, all the accounts which have been produced, all the checks, all the receipted bills, all the memoranda and agreements and statements of accounts are in favor of substantial accuracy of the adjustment of indebtedness made on the 12th and 21st of August, 1893 ; upon the testimony of Baizley and Obermeyer, it is impossible to come to any other conclusion, and we so find, as a matter of fact, that the settlement in writing made by Obermeyer on August 12 and August 21, 1893, with the accompanying itemized account, containing a credit to Obermeyer of $8,000, as a consideration for the conveyance of August 12, 1893, was a settlement and adjustment up to that date of the accounts between . these two men; and there is no satisfactory testimony to substantially contradict these writings or to reduce the amount of balance then declared by the plaintiff Obermeyer.

On the subject of the purpose of the deeds executed by Obermeyer and his wife, there are certain other uncontradicted facts which must be controlling as to the credibility to be given to Obermeyer. Every other deliberate act, every other paper executed subsequently by Obermeyer, every other statement outside of this case, made under oath by Obermeyer, contradicts his present testimony and affirms the absolute character of the conveyance made by him to Baizley. Contemporaneously with the execution of the deeds he executed a lease in writing under which he became the tenant of Baizley, at a fixed rental of the premises in question. This rental he paid, from time to time, by the discharge of certain interest upon incumbrances, as it became due. Again, at a later stage, he executed another lease,

with a collateral agreement in writing averring the ownership of Baizley, and that he held under Baizley as a tenant.  Subsequently still, upon making application to the license court for a license for these premises, in another name, he averred, under oath, that Baizley was the owner of the premises, and in two affidavits, made in the course of litigation between Baizley and himself, dated March 23, 1895, and April 13, 1895, he set forth explanations of the execution of these deeds wholly inconsistent with his present contention in this suit, for he averred in those affidavits that the conveyances were to Baizley as security for his, Baizley's debt, and upon the agreement of Baizley to reconvey when the debt should be paid.  Today the allegations upon which he founds his present equity, and upon which his judgment creditors appear as parties, is in absolute contradiction of the contents of those affidavits.  We have, therefore, four deeds in writing—the two of March, 1893, and two of August, 1893; two written statements of account, in which the deeds and the considerations for them are referred to, dated August 12, and August 23, 1893, respectively; two leases from Baizley to Obermeyer, one of August 12, 1893, and one as late as July 10, 1894, in which the ownership of Baizley was admitted, and the tenancy under him created; an application to the license court in the year 1895, in which Obermeyer, under oath, represented to the court that Baizley was the sole and absolute owner of the premises; and two affidavits filed in judicial proceedings, in which Obermeyer makes averments respecting the purpose for which the deeds were executed wholly inconsistent with the foundation of his present bill of complaint.

Thus eight times he executed writings under seal, bearing upon and acknowledging the absolute character of these conveyances and the valuable consideration for them, once swore to an application for a license averring the same facts, and twice afterwards made other affidavits contradicting his testimony in the present case.  With such a volume of testimony of the most solemn character, thus made by himself, iterating and re-iterating, under oath and otherwise, the validity and integrity of his deeds and conveyances, how is it possible to treat his present testimony as otherwise than wholly unworthy of belief?  As such we find it, and regard the case as presented by him as wholly inadequate to justify a chancellor in setting aside and

annulling the deeds to the defendant, Rudolph R. Baizley. With this view of Obermeyer's testimony it is unnecessary to advert upon that of his wife, and it is sufficient to say that it likewise is dismissed as unworthy of belief and as insufficient to entitle the complainants to the relief asked for. For these reasons the plaintiffs' bill must be dismissed.

In response to the defendants' request for specific findings of fact, we answer that the following requests are affirmatively found: Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 11 and 12. As to request No. 8 the court answers that it is impossible upon the evidence before us, to state accurately the amount of indebtedness of Obermeyer to Baizley at this time, but we do find that the statement of accounts agreed to and signed by Obermeyer on August 12 and August 21, 1893, constitute a full statement of the accounts between them at that time; and do adjudge the balance stated therein to have been then due by Obermeyer to Baizley. It possibly ought to also be said that the evidence adduced by the defendants of experts in the value of real estate fully satisfies the court that the $8,000 agreed upon by the parties, in August, 1893, as a proper valuation of the equity of Obermeyer in the premises in question, was a fair, full and ample valuation, and independently of the agreement between the parties, as to its value, the court would so find upon the testimony of these experts alone.

In response to the requests of the defendants as to the findings of law, we answer affirmatively the requests Nos. 1 and 2, but the other requests for findings of law, being in the alternative, need not be treated.

For the reasons above set forth, the plaintiffs' bill is dismissed with costs.

Defendants' requests for findings of fact were as follows:

1. That the transaction in February or March, 1893, was an uncompleted one, and the arrangement, whatever it was, between the parties, was treated as such, and the transaction of August 12, 1893, took its place.

2. That the transaction of August 12, 1893, was an out and out conveyance from the plaintiff, Alexander Obermeyer and Margaret Obermeyer, his wife, to the defendant, Rudolph R. Baizley, for the consideration of $8,000, which was agreed

upon as the value of his equity and for which he was given credit upon the indebtedness due from him to said Baizley.

3. That from August 12, 1893, up to August 21, 1894, defendant, Rudolph R. Baizley, was the owner in fee of the premises described in the bill.

4. That from August 21, 1894, up to the present time, defendant, John Baizley, has been the owner in fee simple of the premises described in the bill.

5. That no trust was created or existed between the said Rudolph R. Baizley and the plaintiffs, or either of them, with regard to the ownership of the premises described in the bill.

6. That there is due from the plaintiff, Alexander Obermeyer, to defendant, Rudolph R. Baizley, the sum of $14,105.62, with interest from say May 17, 1894, in all $15,586.70, and there is due from him to defendant, John Baizley, the sum of $21,129.44 with interest, amounting in all to $25,377.66, of which $19,000 with interest, in all $23,026.80, is secured by mortgages upon the property in dispute.

7. That defendants have paid on account of the principal of prior mortgages secured upon said property and interest thereon, taxes, water rent, insurance, etc., the sum of $27,817.87 and that said Obermeyer has paid on account of rent the sum of $3,455, and there has been received from the store in the corner property the sum of $900, leaving a balance of disbursements on this account of $23,462.87.

8. That defendant, Rudolph R. Baizley, is indebted to defendant, John Baizley, in the sum of $70,000, and that the conveyance of said premises from said Rudolph R. Baizley to said John Baizley was in part payment of said indebtedness.

9. That plaintiff, Alexander Obermeyer, has not been continuously in possession and occupancy of said real estate, but obtained possession thereof on July 10, 1894, under the lease thereof of that date from said Rudolph R. Baizley to him.

10. That the debts claimed to be due from plaintiff, Alexander Obermeyer, to plaintiffs, C. Schmidt & Son, Gallager & Burton and Henry B. Grauley, were contracted long subsequently to August 12, 1893.

11. That the value of the premises described in the bill is not in excess of $90,000.

12. That Margaret A. Obermeyer has no interest in the premises described in the bill.

*Error assigned* was decree dismissing bill.

*M. J. O'Callaghan,* with him *Joseph P. McCullen,* for appellants.—Trial by judge without a jury was established in Pennsylvania under the Act of April 22, 1874, P. L. 109, and in all of the cases in which this question has been considered it has been held that there must be separate and distinct findings of fact from which the conclusions of law may be drawn. This mandate of the law cannot be ignored nor evaded: Marr v. Marr, 103 Pa. 463; Sweigard v. Wilson, 106 Pa. 207; Butterfield v. Lathrop, 71 Pa. 225; Com. v. Equitable Ben. Assn., 137 Pa. 412; Harris v. Hay, 111 Pa. 562; McHale v. McDonnell, 175 Pa. 632.

The evidence in support of the trust ex maleficio in Rudolph R. Baizley was supported by evidence clear, precise and certain, which met all the requirements of the law, and was confirmed by the action and testimony of the defendant, Rudolph R. Baizley: Sheriff v. Neal, 6 Watts, 534; Morey v. Herrick, 18 Pa. 123; Plumer v. Reed, 38 Pa. 46; Beegle v. Wentz, 55 Pa. 369; Church v. Ruland, 64 Pa. 442; Squires's App., 70 Pa. 266; O'Hara v. Dilworth, 72 Pa. 397; Boynton v. Housler, 73 Pa. 543; Wolford v. Herrington, 86 Pa. 39; Cowperthwaite v. Nat. Bank of Carbondale, 102 Pa. 397; Meurer's App., 119 Pa. 115; Speer v. Burns, 173 Pa. 77; Rich v. Black, 173 Pa. 92; Coal and Coke Co. v. Burke, 172 Pa. 53; 2 Pomeroy's Eq. Jur., sec. 1053.

When a conveyance is made intentionally to defraud creditors it seems perfectly reasonable that it should be held void as to all subsequent, as well as to all prior, creditors on account of ill faith: 2 Rice on Evidence, 969; Clark v. Douglass, 62 Pa. 416; Covanhovan v. Hart, 21 Pa. 495; Renninger v. Spatz, 128 Pa. 524: Werner v. Zierfuss, 162 Pa. 360.

*John R. Read, Silas W. Pettit* and *H. B. Gill,* for appellees, were not heard, but cited in their printed brief, Sankey v. Hawley, 118 Pa. 30; Molley v. Ulrich, 133 Pa. 41; Sower v. Weaver, 78 Pa. 443; Thomas v. Loose, 114 Pa. 35; Jackson v. Payne, 114 Pa. 67.

PER CURIAM, February 7, 1898 :

An examination of the testimony in this case convinces us that the findings of fact made by the learned court below were entirely justified, indeed required, by the evidence before the court. We do not see how any other or different findings could have been made with any propriety. The conclusions of law are so necessarily consequent upon such determinations of fact that they cannot be controverted. We are very clearly of opinion that the decree dismissing the bill was correct, and we affirm it upon the findings of fact and conclusions of law expressed in the opinion. It would have been more suitable if the findings had been expressed in separate and numbered clauses so as to present each one independently and distinctly, and such is the usual practice. We do not think, however, that the omission to do this is a cause of reversal, as the findings are expressed severally, and are easily capable of separate consideration.

Decree affirmed and appeal dismissed at the cost of the plaintiffs.